IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **JAMES PAVISCH,** | Case Number 5:16 CV 1934 |
| Petitioner, | Chief Judge Patricia A. Gaughan |
| v. | Magistrate Judge James R. Knepp, II |
| **BRIAN COOK, Warden,** | |
| Respondent. | REPORT AND RECOMMENDATION |

### INTRODUCTION

*Pro se* Petitioner James Pavisch ("Petitioner"), a prisoner currently in state custody, filed a petition seeking a writ of habeas corpus under 28 U.S.C. § 2254 ("Petition") (Doc. 1). Respondent Warden Brian Cook ("Respondent") filed a Motion to Dismiss (Doc. 11), and Petitioner filed a Response entitled "Traverse in Response to R.O.W. of Respondent" (Doc. 12).

The district court has jurisdiction over the Petition under § 2254(a). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(2). (Non-document entry dated August 26, 2016). For the reasons discussed below, the undersigned recommends the Motion to Dismiss be granted.

### PROCEDURAL BACKGROUND

*State Conviction*

On May 26, 2011, a Portage County Grand Jury indicted Petitioner on three counts of rape of a victim less than 10 years old (in violation of Ohio Rev. Code § 2907.02(A)(1)(b) & (B)) (Counts 1-3); and nine counts of gross sexual imposition of a victim less than 13 years old (in violation of Ohio Rev. Code § 2907.05(A)(4) & (C)(2)) (Counts 4-12). (Ex. 1, Doc. 11-1, at 4-15). On May 31, 2011, Petitioner pleaded not guilty. (Ex. 2, Doc. 11-1, at 17).

On July 15, 2011, Petitioner entered a written plea of guilty to Counts 1-3 (the rape charges). (Ex. 3, Doc. 11-1, at 18-19). The written plea indicated that the penalty was life in prison with parole eligibility after 10 years on each count, with concurrent or consecutive sentences to be decided by the court. *Id.* at 18. The court found Petitioner entered the plea knowingly and voluntarily, and accepted the plea. (Ex. 4, Doc. 11-1, at 20-21). The court also accepted the *nolle prosequi* of the remaining counts of the indictment. *Id.* at 20.

On August 29, 2011, the court sentenced Plaintiff to three consecutive terms of life in prison with parole eligibility after 10 years. (Ex. 5, Doc. 11-1, at 22-23). The entry was journalized on September 2, 2011. (Ex. 25, Doc. 11-1, at 110). Petitioner did not appeal. *See id.*

*Post-Conviction Motions in Trial Court*

On November 1, 2012, Petitioner moved, *pro se*, to withdraw his guilty plea and vacate his sentence, with an attached affidavit. (Ex. 6, Doc. 11-1, at 24-31). In the motion, he alleged a violation of his Sixth Amendment right to counsel, as well as impairments in his own functioning due to a 2006 stroke. *Id.* Specifically, he argued counsel failed to investigate Petitioner's medical history, or thoroughly explain the charges or plea agreement. *Id.* at 26-27. On November 14, 2012, the court overruled Petitioner's motion. (Ex. 7, Doc. 11-1, at 32).[1] Petitioner did not appeal. *See* Ex. 25, Doc. 11-1, at 111).

In a motion filed December 9, 2013, Petitioner, *pro se*, requested appointment of a medical expert to evaluate his medical condition. (Ex. 10, Doc. 11-1, at 40-42). Specifically, he wanted an expert "to perform the appropriate cognitive evaluations and 'FMRI' testing to further establish the stroke (07/03/2006) related deficits leading to his impaired state." *Id.* at 40. He argued his "brain injury renders him deficient in realtime [sic] processing of impressions and other

---

1. The state opposed Petitioner's motion, and Petitioner responded, however, both pleadings were filed after the court overruled the motion. *See* Ex. 8-9, Doc. 11-1, at 33-39.

2

informational data." *Id.* at 41. Petitioner also asked the court to modify his term of incarceration and place him on electronic monitoring. *Id.* On December 18, 2013, the court overruled the motion. (Ex. 11, Doc. 11-1, at 44). Petitioner did not appeal. *See* Ex. 25, Doc. 11-1, at 111.

On November 19, 2014, Petitioner filed a "Motion to Proceed to Judgment", contending the court had not yet ruled on his motion to withdraw guilty plea. (Ex. 12, Doc. 11-1, at 45-47). The state responded that the court had denied the motion on November 12, 2014. (Ex. 13, Doc. 11-1, at 48-50). Petitioner responded that he had not received a copy of the denial, and asked the court to vacate the ruling, and grant his motion to withdraw his plea. (Ex. 14, Doc. 11-1, at 55-58). The court overruled Petitioner's motion to vacate on January 27, 2015. (Ex. 15, Doc. 11-1, at 59). Petitioner did not appeal. *See* Ex. 25, Doc. 11-1, at 111.

*Direct Appeals*

On May 29, 2014, Petitioner filed a motion for leave to file a direct appeal in the Eleventh District Court of Appeals, Portage County. (Ex. 16, Doc. 11-1, at 60-65). Petitioner cited the rule for delayed appeals and pointed to—as reason for his delay—his cognitive impairments due to his stroke. *Id.* at 61-63. On December 1, 2014, the appellate court denied the appeal on procedural grounds, stating that Petitioner had failed to file a notice of appeal with the trial court, and had not filed a judgment entry with his motion as required by Ohio appellate rules. (Ex. 17, Doc. 11-1, at 66-69). The court noted Petitioner could file a new motion for leave to appeal if it complied with the Ohio Rules of Appellate Procedure. *Id.* at 68.

Almost one year later, on May 26, 2015, Petitioner filed a notice of appeal with the trial court (Ex. 18, Doc. 11-1, at 70), and the same motion for leave to file delayed appeal with the appellate court (Ex. 19, Doc. 11-1, at 71-75). On November 2, 2015, the appellate court found that a timely notice of appeal was due no later than October 3, 2011 and noted Petitioner had filed over three and one-half years after that date. (Ex. 20, Doc. 11-1, at 80-81). The court noted Petitioner's

3

given reason for failure to timely appeal was his cognitive impairment and inability to find people who were "trained in aspects of law." *Id.* at 82. The court concluded Petitioner's "reasons fail[ed] to justify both his first delay of over two and one-half years to initiate a delayed appeal and now his second, present attempt in filing his notice of appeal over three and one-half years after his conviction and sentence." *Id.* The court therefore denied his motion for leave to appeal. *Id*

Petitioner, *pro se*, filed an appeal to the Ohio Supreme Court. (Ex. 21, Doc. 11-1, at 85-86). In his memorandum in support of jurisdiction (Ex. 22, Doc. 11-1, at 87-94), he asserted a single proposition of law: "Does Appellate Rule 4(A) violate Fourteenth Amendment protection in criminal appellate procedure", *id.* at 88. The state opposed jurisdiction. (Ex. 23, Doc. 11-1, at 100-07). On March 9, 2016, the Ohio Supreme Court declined to accept jurisdiction. (Ex. 24, Doc. 11-1, at 108).

### FEDERAL HABEAS CORPUS

Petitioner, *pro se*, executed the pending Petition on July 29, 2016, and it was filed on August 1, 2016. (Doc. 1).[2] In the Petition and attached memorandum, he raises three grounds for relief:

> GROUND ONE: Denial of delayed appeal suspends privilege of writ of habeas corpus in violation of U.S. Const.
>
> GROUND TWO: Ineffective assistance of trial counsel.
>
> GROUND THREE: Actual Innocence.

(Doc. 1).

---

2. The Petition was originally filed in the Southern District of Ohio, and was transferred to this Court. *See* Doc. 2. Pursuant to the prison mailbox rule, a pro se prisoner's pleading "is deemed filed when the inmate gives the document to prison officials to be mailed." *In re: Prison Litig. Reform Act*, 105 F.3d 1131, 1132 (6th Cir. 1997) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)).

**DISCUSSION**

*Statute of Limitations*

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") created a one-year limitations period for habeas petitions brought by individuals challenging their state court convictions. 28 U.S.C. § 2244(d). Under 28 U.S.C. § 2244(d)(1), the limitations period begins to run from the latest of four events:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Cases become final for purposes of § 2244(d)(1)(A) when the time to file an appeal has expired. *Lawrence v. Florida*, 549 U.S. 327, 333 (2007). Although the statute of limitations is "not jurisdictional," it "effectively bars relief absent a showing that the petition's untimeliness should be excused based on equitable tolling and actual innocence." *Akrawi v. Booker*, 572 F.3d 252, 260 (6th Cir. 2009). Here, Petitioner's conviction became final on October 3, 2011—the expiration of the 30-day period for filing an appeal under Ohio Appellate Rule 4(A). *See Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 459-60 (6th Cir. 2012) (citing *Gonzalez v. Thaler*, 132 S. Ct. 641, 653-54 (2011)). The statute of limitations on claims related to that conviction began running

5

...
...

the following day—October 4, 2011—and expired one year later, on October 4, 2012, absent tolling. The Petition, dated July 29, 2016, is therefore time-barred unless tolling applies.[3]

*Statutory Tolling*

A properly filed post-conviction petition can serve to toll the statute of limitations in habeas cases. 28 U.S.C. § 2244(d)(2). A state application for post-conviction relief is "properly filed" within the meaning of § 2244(d)(2) "when its delivery and acceptance are in compliance with the applicable laws and rules governing filings, such as those prescribing the time limits for filing." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). State courts are the final arbiters of whether a state collateral action is considered timely, and thus, properly filed. *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005). A state post-conviction petition rejected by the state court on timeliness grounds is not properly filed and, therefore, it cannot serve as the basis for statutory tolling. *Allen v. Siebert*, 552 U.S. 3, 5 (2007). Once the statute of limitations expires, state collateral review proceedings can no longer serve to avoid the time-bar. *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) ("The tolling provision does not, however, revive the limitations period (i.e., restart the clock at zero; it can only serve to pause a clock that has not yet fully run.") (internal quotation and citation omitted).

Relevant to the instant case, a motion to withdraw a guilty plea does not re-start the statute of limitations clock. *Eberle v. Warden*, 532 F. App'x 605, 609 (6th Cir. 2013). Additionally, the denial of a motion for delayed appeal does not "retrigger[]" the AEDPA statute of limitations. *Searcy v. Carter*, 246 F.3d 515 519 (6th Cir. 2001).

Statutory tolling does not assist Petitioner in this case. The one year period began on October 4, 2011, and expired uninterrupted one year later on October 4, 2012. It was not until the following month that Petitioner filed his first motion—to withdraw his guilty plea. (Ex. 6, Doc.

---

3. Because Petitioner is *pro se*, the Petition will be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (noting *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers"); *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985).

11-1, at 24-31). Similarly, his motions for delayed appeal were filed in May 2014 and May 2015, well after the limitations period to challenge his conviction had expired. (Exs. 16 & 19, Doc. 11-1, at 60-65 & 71-75). Because all of Petitioner's actions occurred after the AEDPA statute of limitations had run, none of them can serve as a basis for statutory tolling. *Vroman*, 346 F.3d at 602; *Jurado v. Burt*, 337 F.3d 638, 641 (6th Cir. 2003) ("a motion for state post-conviction review that is filed following the period for seeing habeas relief cannot toll that period because there is no period remaining to toll"); *Eberle*, 532 F. App'x at 605; *Searcy*, 246 F.3d at 519.[4] Absent equitable tolling, therefore, the Petition is untimely.

*Equitable Tolling*

Petitioner has the burden of establishing his entitlement to equitable tolling. *See Jurado*, 337 F.3d at 642. To meet this burden, Petitioner must show that: 1) extraordinary circumstances prevented the filing of his petition, and 2) he was diligent in pursuing his case. *Holland v. Florida*, 560 U.S. 631, 649 (2010). Equitable tolling should only be granted "sparingly". *Solomon v. United*

---

4. Although the factual predicate of Petitioner's first ground, that the denial of his delayed appeal effectively suspends the writ of habeas corpus, arguably could not have been discovered until November 2015 when the state appellate court denied the appeal, (Ex. 20, Doc. 11-1, at 80-81), at this point, the time for challenging Petitioner's conviction under AEDPA had long expired. Put more simply, it is not the denial of Petitioner's delayed appeal that bars his access to habeas corpus here (under a procedural default theory), but rather the operation of the statute of limitations, which had long run before Petitioner sought to appeal. *See DiCenzi v. Rose*, 452 F.3d 465, 468-69 (6th Cir. 2006) ("Such a motion for delayed appeal, *even if granted*, does not restart the statute of limitations[.]") (emphasis added). Moreover, the essence of habeas corpus is an attack by a person in custody upon the legality of that custody; the traditional function of the writ is to secure release from illegal custody. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). An application for federal habeas corpus relief under 28 U.S.C. § 2254 must directly dispute the fact or duration of confinement. *Id.* at 500; *Kirby v. Dutton*, 794 F.2d 245, 247-48 (6th Cir. 1996). The "fact or duration" of physical confinement is at the core of federal habeas corpus. *Preiser*, 411 U.S. at 489-90. Petitioner's first ground does not challenge the "fact or duration" of his confinement. This allegation addresses a collateral matter unrelated to Petitioner's detention and is therefore not cognizable. *See, e.g.*, *Haning v. Wolfe*, 2009 WL 541156, at *5 (S.D. Ohio) (allegation that state court erred in denying motion for delayed appeal "addresses a collateral matter that is unrelated to petitioner's detention"); *Jones v. Warden*, 2008 WL 618639, at *7 (S.D. Ohio) (same).

7

*States*, 467 F.3d 928, 933 (6th Cir. 2006). In the extreme circumstance, a petitioner can prove his entitlement to equitable tolling through a showing of actual innocence under the "miscarriage of justice" standard. *Schlup v. Delo*, 513 U.S. 298 (1995).

Petitioner has not made a specific argument for equitable tolling. He does, however, present arguments about his mental status, and his Petition presents a claim of actual innocence.[5]

*Mental Capacity*

In the memorandum accompanying his Petition, Petitioner argues:

> This Petitioner was a recent stroke victim prior to the presentation of his felony charge. His stroke resulted in a time-lag mental condition closely related to parasomnia, a condition known as state dissociation in which mental alertness and deep sleep overlap in various parts of the brain at the same time.

(Doc. 1-1, at 3); *see also* Doc. 1-1, at 7 ("Counsel's failure to have this Petitioner's mental competency tested where it was obvious that the defendant had recently had a major stroke is prima facie evidence that this Petitioner could not have knowingly or intelligently have agreed to the plea bargain."); Doc. 12, at 1 (alleging his 2006 stroke "yielded long-term irreversible cognitive impairments, causing the myriad regulatory variables to become out-of-sync, which causes the switching between awake and sleep states to become mixed-up").

A petitioner's mental incapacity can warrant equitable tolling of the statute of limitations but mental incompetence is not a *per se* reason to toll a statute of limitations. *McSwain v. Davis*, 287 F. App'x 450, 456 (6th Cir. 2008); *Ata v. Scutt,* 662 F.3d 736, 742 (6th Cir. 2011). The petitioner must make a threshold showing that "(1) he is mentally incompetent and (2) his mental

---

5. Although these arguments are not made explicitly in the name of equitable tolling, the undersigned considers them here in the interest of liberal construction of *pro se* filings. *Franklin*, 765 F.2d at 85 ("The appropriate liberal construction requires active interpretation in some cases to construe a pro se petition to encompass any allegation stating federal relief.") (internal citation and quotation omitted).

incompetence caused his failure to comply with AEDPA's statute of limitations." *Ata*, 662 F.3d at 742; *Nowak v. Yukins*, 46 F. App'x 257, 259 (6th Cir. 2002).

Here, Petitioner has failed to meet the required burden. The Petition, memorandum accompanying the Petition, and the Traverse make clear that Petitioner is in at least the average range of intelligence. Plaintiff alleges his mental condition began with a stroke in 2006. He filed several *pro se* motions with the state courts. (Exs. 6, 10, 12, 14, 16, & 19, Doc. 11-1, at 24-31,40-42, 45-47, 55-58, 60-65, 71-75). He does not allege that his mental status during the statutory time period was any different than his status after that period, or even now. *See Bilbrey v. Douglas*, 124 F. App'x 971, 973 (6th Cir. 2005) (disallowing equitable tolling on the basis of mental incapacity where the habeas petitioner had pursued state court litigation even during the periods when her mental condition was the most impaired). Moreover, Plaintiff presents no evidence other than his own assertions as to the effects of his stroke. *See Watkins v. Deangelo-Kipp*, 854 F.3d 846, 852 (6th Cir. 2017). Further—and most importantly—Plaintiff has presented no evidence and made no showing his mental status was the *cause* of his delayed filing; especially since it is appears from the filings in this case that he is capable of meeting deadlines and conveying thoughts in a coherent and logical manner. *See* Doc. 9 (requesting additional time to submit response); Doc. 12 (timely filed response). Petitioner waited over four years after his to seek habeas relief, and over one year to seek any relief with the state courts. He thus did not pursue his rights diligently, and, as noted above, he has not shown any extraordinary circumstance that prevented him from doing so. The fact that he is "just now, with inmate help, attempting to appeal his sentence . . ." (Doc. 1-1, at3 ), is also unavailing. *See Griffin v. Rogers*, 399 F.3d 626, 637 (6th Cir. 2005) ("[I]gnorance of the law alone is not sufficient to warrant equitable tolling.") (quoting *Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991)); *Jagoda v. Lafler*, 148 F. App'x 345, 347 (6th Cir. 2005) (the same is true

for *pro se* habeas petitioners). Thus, Plaintiff is not entitled to tolling on the basis of mental incapacity.

### *Actual Innocence*

One of the grounds in the instant Petition is "Actual Innocence". (Doc. 1-1, at 7). Thus, while Petitioner does not explicitly argue actual innocence as a reason for equitable tolling, in the interests of liberal construction of a *pro se* Petitioner's claims, the undersigned considers it below. *Franklin*, 765 F.2d at 85.

A so-called gateway claim of actual innocence permits a federal habeas court to excuse the expiration of the statute of limitations and consider the merits of the petition. "In other words, a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." *McQuiggin v. Perkins,* 133 S. Ct. 1924, 1931 (2013). When confronted with an actual innocence claim, "a court cannot consider a petition's untimeliness as 'an absolute barrier to relief.'" *Eberle,* 532 F. App'x at 612 (quoting *McQuiggin*, 133 S. Ct. at 1928). Instead, the timing of the actual innocence claim is a factor in weighing the reliability of the proof of innocence. *McQuiggin*, 133 S. Ct. at 1935 ("Unexplained delay in presenting new evidence bears on the determination whether the petitioner has made the requisite showing.").

To overcome the expiration of the statute of limitations using a gateway claim of actual innocence, a habeas petitioner must first show "that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup,* 513 U.S. at 327. To make this determination, a court must examine "all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial." *House v. Bell,* 547 U.S. 518, 538, (2006) (internal quotation marks omitted). In order to advance a credible actual innocence claim, however, the

petitioner must support his allegations with "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup,* 513 U.S. at 324.

Because a gateway actual innocence claim is a form of equitable tolling, it is a remedy that is granted sparingly. *Souter v. Jones,* 395 F.3d 577, 588 (6th Cir.2005). The Supreme Court has repeatedly counseled that actual innocence is an exception that is rarely granted, and only in the most extraordinary circumstances. *See Schlup*, 513 U.S. at 324 (reasoning that, because new reliable evidence will be unavailable "in the vast majority of cases, claims of actual innocence are rarely successful"); *see also McQuiggin*, 133 S. Ct. at 1928 ("We caution, however, that tenable actual-innocence gateway pleas are rare."); *House*, 547 U.S. at 538 ("The *Schlup* standard is demanding and permits review only in the 'extraordinary' case." (quoting *Schlup*, 513 U.S. at 327).

Petitioner has not met this demanding standard. Although he alleges in his Petition that "[t]he evidence in this case was both contrived and manipulated by a wife of just a few years who did not want to be saddled with a mentally disabled stroke victim for the rest of her life", (Doc. 1-1, at 7), he has provided no evidentiary support of his actual innocence claim.

## CONCLUSION AND RECOMMENDATION

Following review, and for the reasons stated above, the undersigned recommends the Motion to Dismiss be granted.

    s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).